**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 08-4916**

─────────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

SAMUEL RODNEY HOLMES,

        Defendant – Appellant.

─────────────

Appeal from the United States District Court for the District of
South Carolina, at Aiken.  Margaret B. Seymour, District Judge.
(1:05-cr-01253-MBS-1)

─────────────

Submitted:  July 2, 2009          Decided:  July 30, 2009

─────────────

Before NIEMEYER, KING, and GREGORY, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Russell W. Mace, III, THE MACE FIRM, Myrtle Beach, South
Carolina, for Appellant.  W. Walter Wilkins, United States
Attorney, Robert F. Daley, Jr., Mark C. Moore, Assistant United
States Attorneys, Columbia, South Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Samuel Rodney Holmes was convicted by a jury of conspiracy to possess with intent to distribute and distribute fifty grams or more of cocaine base (crack), 21 U.S.C. § 846 (2006) (Count One), and possession with intent to distribute and distribution of five grams or more of crack, 21 U.S.C. § 841 (2006) (Count Two). He received a sentence of 360 months imprisonment. Holmes appeals his convictions and sentence, arguing that the district court (1) abused its discretion in denying his pre-trial motion for a continuance; (2) clearly erred in giving him a two-level increase for possession of a dangerous weapon during the offense and an adjustment for obstruction of justice based on his perjured trial testimony, U.S. Sentencing Guidelines Manual §§ 2D1.1(b)(1), 3C1.1 (2007); and (3) plainly erred in computing his criminal history. We affirm.

Holmes sought a continuance a few days before trial, after a jury had been selected, on the ground that his attorney required more time to explore proffers from government witnesses which had been provided in discovery and a possible alibi defense. The district court denied a continuance, finding that several continuances had been granted already, that Holmes had objected to a prior continuance in October 2006, indicating at that time that he was ready to go to trial, and that the notice

2

of alibi defense filed in January 2007 identified the witnesses on which Holmes intended to rely.

At trial, a law enforcement officer, Michael Jones, and a confidential informant, Shawn Hicks, testified that, on February 27, 2002, in a controlled transaction, Hicks called Holmes on his cell phone to ask if he could buy half an ounce of crack. Holmes offered to sell Hicks a full ounce, to which Hicks agreed. Jones testified that Holmes arrived at the location for the sale driving a white Cadillac, that he recognized Holmes' voice during the recorded sale, and that he and another officer followed Holmes' Cadillac after the sale was completed, noted the license plate number, and visually identified Holmes at a gas station where they pulled in next to his car. Keith Butler testified that he observed Holmes cook seven to nine ounces of powder cocaine into crack once, and saw him cook four to six ounces of cocaine into crack approximately seven times. Butler said he once saw a sawed-off shotgun in Holmes' kitchen, where the crack was cooked; Holmes referred to the shotgun as his "baby." Vernon Clay Lawrence testified that he bought powder cocaine several times in 2001 or 2002.

In Holmes' defense, his mother testified that she bought the car a few days before the controlled buy and gave it to him several months later. She said that, on the date of the controlled buy, the car was parked in her yard, and that it had

3

a different license plate number on that date than the one observed by the law enforcement officer after the controlled buy. Holmes' girlfriend testified that she lived in Columbia, South Carolina, at the time and that Holmes was probably with her in Columbia on the night of the controlled buy. Holmes himself testified that all the witnesses who testified that he cooked crack or sold drugs had testified falsely. He also said he drove the white Cadillac for the first time on February 28, 2002.

At sentencing, Holmes again maintained his innocence and objected to all the drug amounts used to compute his offense level, as well as the firearm enhancement and the obstruction of justice adjustment recommended in the presentence report. He testified that he had never owned a gun, that he did not sell crack to Hicks on February 27, 2002, and that Hicks, Keith Butler, and Vernon Clay Lawrence all gave false testimony against him. The district court overruled his objections, determined that the advisory guideline range was 360 months to life, and sentenced Holmes at the bottom of the range.

On appeal, Holmes first challenges the district court's rulings concerning his sentence. We agree that the district court erred by summarily overruling his objection to the obstruction of justice adjustment without finding, by a preponderance of the evidence, that Holmes' trial testimony

constituted perjury, that is, false testimony about a material matter, given "with the willful intent to deceive (rather than as a result of confusion, mistake, or faulty memory)." United States v. Quinn, 359 F.3d 666, 681 (4th Cir. 2004) (internal quotation and citations omitted). However, without the adjustment, Holmes' guideline range would remain at 360 months to life. An offense level of 40, with criminal history category IV (or with category III), yields a guideline range of 360 months to life. USSG Ch. 5, Pt. A (Sentencing Table). Therefore, we conclude that the error is harmless. Williams v. United States, 503 U.S. 193, 203 (1992) (noting that sentencing error is subject to harmless error analysis and remand is not required if "the error did not affect the district court's selection of the sentence imposed"); see also United States v. Delgado-Martinez, 564 F.3d 750, 752-53 (5th Cir. 2009); United States v. Smith, 562 F.3d 866, 874 (7th Cir. 2009); United States v. Anderson, 526 F.3d 319, 324 (6th Cir. 2008); United States v. Smalley, 517 F.3d 208, 212 (3d Cir. 2008); United States v. Kochekian, 977 F.2d 905 (4th Cir. 1992).

We also agree (and the government concedes) that the district court plainly erred in assigning two criminal history points under § 4A1.1(b) for Holmes' 1991 sentence for driving under a suspended license where the sentence was sixty days custody or a $300 fine. Application Note 4 to § 4A1.2 directs

5

that a "sentence which specifies a fine or other non-incarcerative disposition to a term of imprisonment . . . is treated as a non-imprisonment sentence." Under United States v. Olano, 507 U.S. 725, 732-37 (1993), unpreserved error may be corrected only if error occurred that was plain, that affects the defendant's substantial rights, and that, if uncorrected, would seriously affect the fairness, integrity, or public reputation of judicial proceedings. Had Holmes not received these two criminal history points, he would have been in category III. However, even if Holmes were in criminal history category III and his offense level were reduced to 40, his guideline range would remain 360 months to life. Therefore, Holmes' substantial rights were not affected by the error, and we decline to notice it.

We are satisfied that the district court did not clearly err in making the two-level enhancement for possession of a deadly weapon during the offense under § 2D1.1(b)(1). United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001). (stating standard of review). Application Note 3 to § 2D1.1 explains that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Thus, the government "need only show that the weapon was present during the relevant illegal drug activity." McAllister, 272 F.3d at 234.

6

Holmes argues that Keith Butler's testimony that he saw a sawed-off shotgun in the kitchen of Holmes' trailer was insufficient to justify the enhancement because Holmes did not sell drugs at his home and there was no evidence he had the gun with him for protection during any of the drug sales that occurred away from his residence. Thus, he contends that the government did not show that the gun was connected to the offense. However, because the evidence established that Holmes possessed a firearm in the place where he regularly cooked cocaine into crack for Cedric Butler, and there was no evidence that would support a finding that it was clearly improbable that the gun was connected to Holmes' drug activity, we conclude that the district court did not clearly err in making the enhancement.

The district court's denial of a continuance is reviewed for abuse of discretion. United States v. Williams, 445 F.3d 724, 738 (4th Cir. 2006). The trial court abuses its discretion when its denial of a motion for continuance is "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable reason for delay." Id. at 739 (internal quotation omitted).

Holmes maintains that the district court's denial of his last-minute request for a continuance deprived him and his attorney of adequate time to examine the discovery and prepare a

7

defense. Holmes claims that he was unable to introduce into evidence documents relating to his mother's purchase of the white Cadillac he was alleged to have driven during the controlled buy on February 27, 2002.[1] Holmes maintains that the documentation would have supported his mother's testimony that her Cadillac had a different license number on that date than the number observed by Agent Jones. The government opposed introduction of these documents because they were produced on the morning of trial and not in a timely manner according to the discovery rules, thus preventing the government from being prepared to cross examine the witness adequately about the documents.[2]

At trial, Moore testified that she purchased the Cadillac on February 22, 2002, that it was registered in her name, that the license number when she bought it was 391 NLE, and that the number was changed a month later. The jury thus had to weigh conflicting testimony about the license number of the Cadillac owned by Moore on the day of the controlled buy without documentation to support either the testimony of Moore

---

[1] Holmes does not contend that his attorney had insufficient time to examine the proffer statements of government witnesses.

[2] During the pretrial conference when the district court denied Holmes' motion for a continuance, defense counsel did not suggest that time might be needed to allow the government to examine such documents.

or Agent Jones. The government's case, however, rested mainly on the testimony of Jones and the informant, who both identified Holmes as the seller.

Given that several continuances had been granted before the district court denied Holmes' request for an additional continuance,[3] and that the trial attorney was appointed several months earlier, apparently received all discovery well in advance of the trial date, and had ample time to explore a defense, we conclude that the district court did not abuse its discretion in denying a continuance on the eve of trial.

We therefore affirm the convictions and the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[3] The record reveals that the district court granted five continuances before trial.